IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| POLYTIMI VARGO, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-1173 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | Chief Judge Gary L. Lancaster Magistrate Judge Maureen P. Kelly |
| Defendant. | ) ) | |

# REPORT AND RECOMMENDATION

I. **INTRODUCTION**

Plaintiff Polytimi Vargo ("Vargo") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. For the reasons that follow, it is respectfully recommended that the decision of the Commissioner be affirmed.

II. **PROCEDURAL HISTORY**

Vargo protectively applied for disability insurance benefits on December 11, 2007, alleging that she had become disabled on September 6, 2007. (R. at 111, 147). The application was administratively denied on March 17, 2008. (R. at 83). Vargo responded on May 2, 2008, by filing a timely request for an administrative hearing. (R. at 88-89). On August 20, 2009, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Anne W. Chain (the "ALJ"). (R. at 24). Vargo, who was represented by counsel, appeared and testified at the hearing. (R. at 28-47). Dr. William Reed, an impartial vocational expert, also testified at the

1

hearing. (R. at 47-66). In a decision dated September 14, 2009, the ALJ determined that Vargo was not "disabled" within the meaning of the Act. (R. at 11-23).

On September 18, 2009, Vargo sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 6-10). The Appeals Council denied Vargo's request for review on July 10, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1). Vargo commenced this action on September 3, 2010, seeking judicial review of the Commissioner's decision. (ECF Nos. 1, 2 & 3). Vargo and the Commissioner filed motions for summary judgment on March 25, 2011, and April 25, 2011, respectively. (ECF Nos. 9 & 11). The cross-motions for summary judgment filed by the parties are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(B)-(C).

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541,

101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, this Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. VOCATIONAL FACTORS

Vargo was born on August 8, 1965, making her forty-two years old on her alleged onset date and forty-four years old on the date of the ALJ's decision. (R. at 111). She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 404.1563(c). She had a high school diploma, an associate's degree in business, and an ability to communicate in English. (R. at 28, 150); 20 C.F.R. § 404.1564(b)(4)-(5). During the fifteen years immediately preceding her alleged onset date, Vargo worked as an accounting clerk for a trucking company, an assistant manager for a clothing store, a coordinator for logistics systems, and a dispatcher for trucking and logistics companies. (R. at 152).

## V. THE DECISION OF THE ALJ

The ALJ determined that Vargo had not engaged in substantial gainful activity subsequent to her alleged onset date. (R. at 16). Vargo was found to be suffering from a renal transplant history (*i.e.*, kidney disease), diabetes mellitus, asthma, gout, degenerative disc disease of the cervical spine, hyperlipidemia, gastroesophageal reflux disease ("GERD"), breast cancer, and mild anxiety. (R. at 16-17). Although Vargo's breast cancer and mild anxiety were deemed to be "non-severe," her remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c). (R. at 16-17). The ALJ concluded that Vargo's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17).

5

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Vargo's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) [sic] lifting and carrying 10 pounds, standing and walking up to 2 hours and sitting up to 6 hours in an 8-hour work day, and allows [sic] a sit-stand option for 45 minutes at will. In addition, she is unable to climb ladders, ropes or scaffolds; or perform no [sic] more than occasional balancing, stooping, kneeling, crouching, and crawling; and she must avoid poor ventilation.

(R. at 17-18). Although Dr. Reed classified Vargo's prior accounting clerk position as a "light"[1] job, he testified that similar accounting clerk positions existed at the "sedentary"[2] level of exertion. (R. at 56-570). The ALJ relied on Dr. Reed's testimony to determine that Vargo could return to her "past relevant work"[3] as an accounting clerk, since she remained capable of performing the duties of that job "as generally performed in the national economy."[4] (R. at 23); 20 C.F.R. § 404.1560(b)(2).

## VI.  DISCUSSION

Vargo argues that the ALJ's residual functional capacity assessment and corresponding hypothetical questions to Dr. Reed failed to fully account for the limitations caused by her

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. § 404.1560(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576.

[4] A claimant who can no longer perform the duties of a previously-held job is nevertheless deemed to be capable of returning to his or her "past relevant work" if he or she "retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Rivera v. Barnhart*, 239 F.Supp.2d 413, 420 (D.Del. 2002).

impairments. ECF No. 10 at 18-20. She specifically contends that the ALJ erred in failing to analyze the "objective medical evidence" pertaining to her fatigue and in determining that her breast cancer was a "non-severe" impairment. *Id.* at 6-17. These issues will be addressed in sequential order.

Vargo underwent a kidney transplant in December 2002. (R. at 299-300, 306). Her nephrologist, Dr. Barbara A. Clark, reported on May 22, 2003, that Vargo was "doing well" and had "excellent kidney function." (R. at 227). Although Vargo experienced three episodes of epigastric pain during the ensuing month, Dr. Jeffrey Cohen opined on June 28, 2003, that the pain had a gastro-intestinal origin. (R. at 277). Vargo was instructed to take Nexium to address that problem. (R. at 277). A renal ultrasound conducted on July 21, 2005, revealed that the transplanted kidney was being "maintained normally without evidence of elevation of resistive index," and that the cortex to the transplanted kidney was being "maintained normally without evidence of mass lesions or hydronephrosis." (R. at 230). A second renal ultrasound performed on February 24, 2007, yielded normal results. (R. at 448).

At the hearing, Vargo testified that she could not work because of fatigue. (R. at 29). In an attempt to impugn the ALJ's determination that she could engage in a limited range of sedentary work activities, Vargo points out that her creatinine levels have been consistently low since her alleged onset date. ECF No. 10 at 6-11. She asserts that the ALJ should have relied on this "objective evidence" to credit her subjective complaints of disabling fatigue. *Id.* at 6-9.

On January 3, 2008, Dr. Clark reported that Vargo's "baseline creatinine" levels were fluctuating between 1.5 and 2.2 "based on her state of hydration." (R. at 534). That same day, Dr. Clark completed a "medical source statement" detailing Vargo's physical abilities and limitations. (R. at 395-396). In the statement, Dr. Clark indicated that Vargo could frequently

7

lift or carry objects weighing up to ten pounds and occasionally lift or carry objects weighing up to twenty pounds. (R. at 395). She opined that Vargo could spend four to five hours of an eight-hour workday standing or walking, and that her sitting, pushing and pulling abilities were unlimited. (R. at 395). Dr. Clark further reported that Vargo was limited to only occasional postural maneuvers, and that poor ventilation, dust, fumes, odors, gases and humidity would aggravate her asthma. (R. at 396). Dr. Juan B. Mari-Mayans, a nonexamining medical consultant, later expressed the view that Vargo could perform a range of light work activities involving only occasional postural maneuvers. (R. at 517-523).

Vargo's argument concerning her creatinine levels simply cannot carry the day under the present circumstances. An administrative law judge lacks the expertise to translate raw medical data into specific functional limitations. *Rivera-Torres v. Secretary of Health & Human Services*, 837 F.2d 4, 6-7 (1st Cir. 1988); *Barton v. Astrue*, 549 F.Supp.2d 1106, 1122-1123 (E.D.Mo. 2008); *Brown v. Barnhart*, 285 F.Supp.2d 919, 931-933 (S.D.Tex. 2003); *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000); *Gathright v. Shalala*, 872 F.Supp. 893, 898 (D.N.M. 1993). He or she must ordinarily rely on the opinion of a medical professional to do so. *Id.* Dr. Clark, Vargo's treating nephrologist, specifically referred to Vargo's "fatigue" in her statement describing Vargo's lifting, carrying, standing and walking limitations. (R. at 395). The statement was completed on the same day that Dr. Clark reported the fluctuation in Vargo's creatinine levels. (R. at 534). Vargo testified at the hearing that Dr. Clark had been treating her for at least thirteen years. (R. at 37). Given the prolonged treating relationship between Dr. Clark and Vargo, Dr. Clark's opinion was entitled to considerable weight under the Commissioner's regulations. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Since Dr. Clark had already provided a particularized description of the functional limitations caused by

8

Vargo's fatigue, the ALJ had no independent duty to extract additional limitations from the low creatinine levels recorded in Dr. Clark's treatment records.

A claimant's productive work history is a factor that ordinarily weighs in favor of his or her credibility. *Rieder v. Apfel*, 115 F.Supp.2d 496, 505 (M.D.Pa. 2000). Vargo argues that the ALJ should have relied on her work history to credit her subjective complaints of disabling fatigue. ECF No. 10 at 9-11. This argument is unpersuasive. A careful review of the record confirms that the ALJ *seriously considered* Vargo's subjective complaints. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993)(explaining that an administrative law judge must give "serious consideration" to a claimant's subjective complaints whenever there is objective evidence of a medical condition that could reasonably be expected to cause the symptoms alleged by the claimant). The ALJ determined that Vargo needed a sit/stand option permitting her to change positions every forty-five minutes. (R. at 17, 54-55). This accommodation was included within the residual functional capacity assessment solely because Vargo had testified that she needed to walk around every forty-five minutes to increase the flow of blood to her transplanted kidney and "right groin area." (R. at 37-38). It is worth noting that Dr. Clark did *not* believe that Vargo needed a sit/stand option. (R. at 395). The fact that the ALJ identified this functional limitation suggests that she adequately considered Vargo's testimony in addition to the documentary record.[5]

It was permissible for the ALJ to consider inconsistencies in Vargo's testimony as a factor weighing against her credibility. *Horodenski v. Commissioner of Social Security*, 215 Fed. Appx. 183, 188-189 (3d Cir. 2007)(unpublished). Vargo was involved in an automobile accident on July 6, 2007. (R. at 32, 430). Her primary care physician, Dr. Anita Mital, cleared her to

---

[5] Vargo testified that her asthma was "under control." (R. at 38). The ALJ accounted for this impairment by specifying that Vargo needed to avoid work environments with poor ventilation. (R. at 18).

9

return to work "without restrictions" on August 10, 2007. (R. at 334). The record indicates that Vargo stopped working on September 6, 2007. (R. at 151). She testified that she had been discharged by her employer for refusing to work additional hours during the week and full days on weekends. (R. at 32-33). She stated that she had been "having a hard time" working forty hours per week. (R. at 33). Although Vargo may have been incapable of working the long hours requested of her, she implicitly acknowledged that she could perform the duties of a full-time job by testifying that she had been unable to work "longer hours." (R. at 33). Under the Commissioner's regulations, a claimant's residual functional capacity is measured by reference to what he or she can do on a "regular and continuing basis." 61 FED. REG. 34474, 34475-34476 (1996). A claimant who can work for eight hours per day and five days per week is considered to be capable of working on a "regular and continuing basis." *Id.* Since Vargo expressly attributed the termination of her employment to her inability to work "longer hours," it was reasonable for the ALJ to conclude that Vargo was capable of meeting the demands of her preexisting schedule. This is especially true in light of the fact that neither Dr. Clark nor Dr. Mital believed Vargo to be incapable of working. (R. at 334, 395-396).

Vargo takes issue with the ALJ's determination that her breast cancer was a "non-severe" impairment. ECF No. 10 at 12-17. At the hearing, Vargo testified that she had undergone surgery on July 8, 2009, to remove a cancerous tumor from her right breast and a subsequent operation to insert a catheter necessary for radiation treatment. (R. at 35). She explained that her breast cancer had been diagnosed on May 28, 2009. (R. at 39). When questioned about her treatment plan, Vargo stated that she would be undergoing radiation treatment for seven weeks, and that three months of chemotherapy was expected to follow. (R. at 35). Hormone therapy was also included within the treatment plan, but Vargo did not specify its anticipated duration.

10

(R. at 35). The ALJ did not consider Vargo's breast cancer to be a "severe" impairment because her recovery was expected to occur less than twelve months from the date of her diagnosis. (R. at 16). The crux of Vargo's argument is that the ALJ should have considered evidence confirming the existence of her breast cancer prior to May 28, 2009. ECF No. 10 at 12-17.

An impairment that is not expected to result in a claimant's death must last (or be expected to last) for a continuous period of at least twelve months in order to constitute a "severe" impairment. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). The documentary record supports Vargo's assertion that she had breast cancer prior to the date of her diagnosis. A mammography conducted on November 29, 2007, depicted nodules in both of Vargo's breasts. (R. at 484). The nodules appeared to be benign. (R. at 484). Vargo underwent a bilateral breast sonogram on December 20, 2007. (R. at 415). The sonogram revealed that she had nodular densities in both of her breasts. (R. at 415). The nodule on her left breast was found to be "solid" with "benign characteristics," while the nodule on her right breast was found to be a cyst. (R. at 416). Vargo was advised to undergo a biopsy of her left breast and have the cyst on her right breast aspirated. (R. at 412). The recommended procedures were performed on January 17, 2008. (R. at 407-411). Although the biopsy of the left breast did not reveal the existence of cancer, it was a very painful experience for Vargo. (R. at 39-40). She testified that the local anesthesia administered prior to the procedure had not sufficiently numbed her left breast to preclude "severe pain." (R. at 39). On July 24, 2008, Vargo underwent a bilateral breast ultrasound. (R. at 594-595). A "hypoechoic mass" was detected on her right breast, and another biopsy was recommended. (R. at 595). Vargo was reluctant to have another biopsy because of the unpleasant circumstances surrounding the biopsy of her left breast. (R. at 561, 578). Nevertheless, Dr. Annmarie Ray told Vargo on December 15, 2008, that the biopsy should be

11

done, since a malignant tumor could not be ruled out. (R. at 555). The biopsy was finally performed on May 28, 2009. (R. at 581, 588-589). A cancerous tumor was detected. (R. at 565, 570, 590). Dr. Ray recommended that Vargo proceed with "the most aggressive treatment regimen possible." (R. at 549). The cancerous tumor was surgically removed on July 8, 2009. (R. at 35, 574).

The record does not support the ALJ's determination that Vargo's breast cancer had not lasted (or been expected to last) for the statutory twelve-month period. Moreover, the United States Court of Appeals for the Third Circuit has described the inquiry at the second step of the sequential evaluation process as "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). Given the low threshold for finding a claimant's impairment to be "severe," the Commissioner's invocation of the second step to *dispose of a claim* "is certain to raise a judicial eyebrow." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004). In this case, however, Vargo's *claim* was not denied at the second step of the process. Other "severe" impairments were found, and her claim proceeded to the third and fourth steps. (R. at 16-23). The claim's progression beyond the second step rendered the ALJ's alleged error concerning the severity of Vargo's breast cancer inconsequential and harmless. *Salles v. Commissioner of Social Security*, 229 Fed. Appx. 140, 145, n. 2 (3d Cir. 2007)(unpublished); *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

Irrespective of whether Vargo's breast cancer was "severe" under the Commissioner's regulations, the ALJ was required to account for any limitations resulting from that impairment in determining Vargo's residual functional capacity. 20 C.F.R. § 404.1545(a)(2), (e). The ALJ

12

specifically referred to Vargo's breast cancer, and the expected duration of her treatment regimen, in the portion of the opinion discussing her residual functional capacity. (R. at 20).

In order for a claimant to be "disabled" within the meaning of the Act, both his or her medically determinable impairment (or combination of impairments) and his or her inability to work must last (or be expected to last) for the statutory period of twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). This Court recognizes that Vargo's need to undergo radiation, chemotherapy and hormonal treatments was certainly a factor relevant to her ability to work during the treatment period. *Kangas*, 823 F.2d at 777-778. Nonetheless, Vargo points to nothing in the record which suggests that her treatments were expected to last for a full year. Furthermore, she fails to identify evidence suggesting that her breast cancer resulted in specific functional limitations beyond those inherent in her need for treatment. A claimant seeking benefits under the Act bears the burden of proving that his or her medically determinable impairments actually cause work-related limitations. *Baker v. Astrue*, 617 F.Supp.2d 498, 510 (E.D.Ky. 2008). Given that Vargo makes no attempt to explain how her breast cancer affected her ability to work prior to the date of her diagnosis, her argument concerning that impairment provides no logical basis for setting aside the ALJ's decision. Although the ALJ erred in determining that the impairment itself had not lasted long enough to satisfy the Act's durational requirement, her alternative finding that no additional functional limitations of sufficient duration had been established provides an adequate basis for sustaining her decision denying Vargo's application for benefits. (R. at 20, 22).

VII. CONCLUSION

Vargo's treating nephrologist believed her to be capable of performing a limited range of sedentary work activities. (R. at 395-396). No physician has submitted an opinion supporting

13

Vargo's allegation of total disability. The ALJ's residual functional capacity assessment, which included a sit/stand option that Dr. Clark had found to be unnecessary, was more than adequate to account for the limitations established in the record. (R. at 17, 395). Since the ALJ's hypothetical questions to Dr. Reed adequately conveyed all of Vargo's credibly established limitations, Dr. Reed's testimony constituted "substantial evidence" of Vargo's ability to return to her past relevant work as an accounting clerk. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Accordingly, it is respectfully recommended that Vargo's motion for summary judgment (*ECF No. 9*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 11*) be granted, and that the Commissioner's decision denying Vargo's application for benefits be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011)(describing the "plain error review" available to a party who fails to file written objections as "disadvantageous" to that party).

BY THE COURT:

/s/     Maureen P. Kelly
United States Magistrate Judge

cc:     All counsel of record